IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2008

## STATE OF TENNESSEE v. LEE STANLEY ALBRIGHT

**Direct Appeal from the Circuit Court for Sevier County**
**No. 10943-III    Rex Henry Ogle, Judge**

_____

**No. E2007-02671-CCA-R3-CD - Filed December 8, 2008**

_____

A Sevier County jury acquitted the Defendant, Lee Stanley Albright, of driving under the influence, second offense, but it found that the Defendant violated the implied consent law. The trial court revoked the Defendant's driver's license for two years. In this appeal, the Defendant contends: (1) the use of a criminal indictment to initiate proceedings against the Defendant for a violation of the implied consent law was improper; (2) the trial by jury of the violation of implied consent charge was improper; and (3) the evidence was insufficient to support the jury's finding of a violation of the implied consent law. After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Ronald R. Reagan, Newport, Tennessee, for the Appellant, Lee Stanley Albright.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; James Dunn, District Attorney General; and Johnnie D. Sellars, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Facts**

A Sevier County Grand Jury indicted the Defendant in "COUNT ONE" of the indictment for driving under the influence, second offense, and in "COUNT TWO" for violation of the implied consent law. The trial court conducted a jury trial where the following evidence was presented: the testimony of the arresting officer, Larry Cantley, of the Gatlinburg Police Department; the testimony of the Defendant; a videotape of the Defendant's arrest and subsequent refusal to submit to a blood-alcohol content test; and an implied consent form signed by the Defendant.

Viewed in the light most favorable to the State, the evidence at trial showed that Officer Cantley, while traveling on U.S. Highway 441, observed the Defendant "come over on top of [his] cruiser." After Officer Cantley began to follow the Defendant, he started the camera within his cruiser. Officer Cantley then observed the Defendant having "trouble maintaining his lane" and following a preceding vehicle too closely. When the Defendant turned right without stopping at an intersection clearly marked "no right turn on red," Officer Cantley activated his emergency lights and stopped the Defendant.

Upon approaching the Defendant and requesting his license, registration, and proof of insurance, Officer Cantley smelled an "odor associated with alcoholic beverages." Officer Cantley requested the documents three times before the Defendant finally produced them. The Defendant first stated that he had consumed five alcoholic beverages, but he soon changed this number to three. However, the Defendant later repeated that he had consumed five alcoholic beverages.

Officer Cantley administered several field sobriety tests, most of which, in the opinion of Officer Cantley, the Defendant failed. The Defendant passed the "finger-count" test, but he failed the "nine-step walk and turn" test, the "one-leg" test, and the "finger-to-nose" test. Officer Cantley acknowledged that the Defendant stated during the sobriety tests that a back injury prevented certain physical movements, such as standing on one leg and walking heel-to-toe. However, the officer testified that he was "watching for smaller signs of impairment," such as divided attention, speech patterns, and name-dropping, and that he considered the Defendant's physical disability but nonetheless concluded that the Defendant was driving under the influence.

After performing poorly on the finger-to-nose test, Officer Cantley placed the Defendant under arrest and transported him for booking. At the police station, he requested that the Defendant take a blood-alcohol content test and read an "implied consent form" to the Defendant. An implied consent form explains the consequences of refusing to take a blood-alcohol test and allows a defendant to select either "I will submit to the test" or "I refuse to submit to the test." Also, Officer Cantley explained the form in "lay terms." The Defendant refused to take the test. He selected "I refuse to submit to the test" and signed the implied consent form.

The Defendant testified that on the night at issue, he consumed five alcoholic beverages between 2:00 P.M. and 7:00 P.M., ate a meal, and then drank only water until the arrest at around 1:00 A.M. The Defendant claimed that the vehicle that Officer Cantley observed the Defendant following actually "started coming over into my lane and I hit the brakes and I let him slide in front of me, and we were close. . . . We were as close as you could get without hitting each other. I thought he was going to hit me." He testified that he turned right only because this preceding vehicle turned at the light without stopping, leading him to believe that the light was green.

The Defendant attributed his poor performance on the field sobriety tests to a back injury. The Defendant explained that fifteen years ago he sustained a work-related back injury that left him totally disabled "with a lot of nerve damage . . . where sometimes [he can] walk pretty good and other times [he cannot] walk too good."

At the conclusion of the hearing, the jury acquitted the Defendant of driving under the

influence, but it found that the Defendant violated the implied consent law. The trial court revoked the Defendant's driver's license for two years because the Defendant had a prior conviction for driving under the influence.

## II. Analysis

On appeal, the Defendant contends: (1) the use of a criminal indictment to initiate proceedings against the Defendant for violation of the implied consent law was improper; (2) the trial by a jury of the violation of implied consent charge was improper; and (3) the evidence was insufficient to support the jury's verdict that he violated the implied consent law.

### A. Propriety of Indictment

The Defendant contends that the use of a criminal indictment to commence proceedings to determine if he violated the implied consent law was improper. The State answers that although the implied consent violation in this case is a civil offense, a criminal indictment was a proper method of commencing these proceedings.

With certain exceptions,[1] violating the implied consent statute is not a crime but a civil wrong: "If the court finds that the driver violated the provisions of [the implied consent statute], ...the driver shall not be considered as having committed a criminal offense; however, the court shall revoke the license of such driver." T.C.A. § 55-10-406(4)(A) (2006). Accordingly, the Tennessee Code requires that a Defendant charged with violating the implied consent statute be brought into court through a "separate warrant or citation that does not include" a charge of driving under the influence. T.C.A. § 55-10-406(6).

Although the Tennessee Code does not explicitly authorize the State to initiate proceedings for violation of the implied consent law through a criminal indictment, a criminal indictment is a valid way to initiate proceedings to determine whether a defendant violated the implied consent law. As this Court has previously explained, although the implied consent statute does not specify what charging instrument should be used, the State may notify a defendant of an implied consent charge through the issuance of an indictment. *See State v. Frank Peter Pinchak*, E2004-01184-CCA-R3-CD, 2005 WL 946752, *3 (Tenn. Crim. App., at Knoxville, Apr. 25, 2005) ("The State simply chose to notify the defendant of the implied consent violation through use of an indictment....this Court has previously upheld the imposition of a civil implied consent violation framed in an indictment.), *perm. app. denied* (Oct. 24, 2005). *See State v. Michael Douglas Willis*, No. E2002-00769-CCA-R3-CD, 2002 WL 31556510, *3 (Tenn. Crim. App., at Knoxville, Nov. 19, 2002) (affirming a finding of a violation of the implied consent law where an indictment initiated the proceedings), *perm. app. denied* (Mar. 10, 2003); *State v. Richard Gastineau*, No. W2004-02428-CCA-R3-CD, 2005 WL

---

[1]We note that a violation of the implied consent law may result in criminal penalties if the defendant is driving on a license that is cancelled, suspended, or revoked for certain prior convictions. *See* Tenn. Code. Ann. § 55-10-406(a)(3) (2006).

3447678, *3 n.2 (Tenn. Crim. App., at Jackson, Dec. 14, 2005) ("Although the statute provides that [the implied consent violation and the arresting offense] should be charged 'by a separate warrant or citation,' we believe that charging the violations in separate indictments satisfies the legislators' intent."), *no Tenn. R. App. P. 11 application filed*. Furthermore, in our view an indictment that contains a distinct count specifically listing a violation of the implied consent law is effective to initiate proceedings against a defendant for a violation of the implied consent law.

In this case, the grand jury returned an indictment against the Defendant that included two distinct counts. Count one charged the Defendant with driving under the influence, second offense. Count two charged the Defendant with a violation of the implied consent law. Therefore, the Defendant was validly notified of the commencement of the implied consent violation proceedings against him. The Defendant is not entitled to relief on this issue.

### B. Propriety of Trial by Jury

The Defendant contends that the trial by a jury to determine whether he violated the implied consent law was improper. The State answers that the Tennessee Code explicitly requires the court that tries the Defendant on the arresting offense to also try the Defendant for the implied consent violation.

As explained above, violation of the implied consent law is in most cases not a criminal act. T.C.A. § 55-10-406(4)(A). However, the Tennessee Code authorizes criminal courts to adjudicate charges of such violations. T.C.A. § 55-10-406(4)(A). Specifically, the Code requires that "the determination as to whether a driver violated the [implied consent law] shall be made at the same time and by the same court as the court disposing of the offense for which such driver was placed under arrest." T.C.A. § 55-10-406(4)(A). Because the Code authorizes "the same court" that disposes of the arresting offense to determine whether a defendant violated the implied consent law, it is logical to assume that the evidence pertaining to the arresting offense and the implied consent violation will be presented at the same trial. Although the Code does not specifically authorize the right to a jury trial for the alleged implied consent violation, we can see no error in the procedure employed in this case.

Tennessee courts have routinely affirmed judgments entered pursuant to a jury's finding of an implied consent violation. *See, e.g.*, *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002); *State v. Thomas Lee Phillips*, No. E2004-00760-CCA-R3-CD, 2005 WL 1827838, *5 (Tenn. Crim. App., at Knoxville, Aug. 3, 2005), *no Tenn. R. App. P. 11 application filed*; *State v. Michael Trew,* No. E2003-01915-CCA-R3-CD, at *1 (Tenn. Crim .App., Knoxville, Nov. 17, 2004).

In this case, the jury found that the Defendant violated the implied consent law, and accordingly, the trial court revoked the Defendant's license. We conclude that the trial by jury to determine whether the Defendant violated the implied consent law was proper. We cannot see that the Defendant suffered any prejudice from a jury determining the implied consent issue. The Defendant received a jury trial, with the trial judge acting as the "thirteenth juror." *See* Tenn. R.

4

Crim. P. 33(d). Thus, had the trial judge disagreed with the jury about the weight of the evidence, the Defendant would have been granted a new trial.

Finally, the Defendant made no timely objection to this procedure prior to trial and cannot now be heard to complain that a jury rather than the court determined that he violated the implied consent law. Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). The Defendant is not entitled to relief on this issue.

## C. Sufficiency of the Evidence

The Defendant contends that the evidence presented at trial is insufficient to support the jury's finding of a violation of the implied consent law. Specifically, the Defendant contends that the evidence was necessarily insufficient to support the "reasonable grounds" element of implied consent, because the jury acquitted the Defendant of the driving under the influence charge. The State disagrees, contending that the evidence is sufficient.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1965). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This court must afford the State of Tennessee the strongest legitimate view of the evidence

contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilty against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). Importantly, the credibility of the witnesses, the weight given to their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. *Bland*, 958 S.W.2d at 659.

A finding of a violation of the implied consent law requires that a person, advised of the consequences of refusal, "refuse to submit" to taking "a test for the purpose of determining the alcoholic or drug content of that person's blood" when the "test is administered at the direction of the law enforcement officer having reasonable grounds to believe such a person was driving under the influence of an intoxicant or drug." T.C.A. § 55-10-406. "Any person who drives any motor vehicle in the state is deemed to have given consent to [this] test." T.C.A. § 55-10-406.

In this case, the Defendant almost struck Officer Cantley's cruiser with his vehicle. The Defendant continued to drive erratically, and he disregarded several traffic laws. Upon stopping the Defendant, Officer Cantley smelled alcohol on the Defendant, and the Defendant admitted to consuming five alcoholic drinks. The Defendant subsequently failed several field sobriety tests. Moreover, Officer Cantley gave consideration to the Defendant's disability by testing for non-motor signs of impairment such as inability to focus and inability to give divided attention. This evidence sufficiently supports the jury's finding that Officer Cantley had reasonable grounds to believe the Defendant to be intoxicated.

The parties stipulated, and the videotape and implied consent form confirmed that Officer Cantley both requested a blood alcohol test and advised the Defendant of the consequences of refusal. The parties further stipulated that the Defendant refused to submit to the blood alcohol test.

We conclude that a rational trier of fact could find beyond a reasonable doubt,[2] and thus by a preponderance of the evidence, that reasonable grounds existed for Officer Cantley to request a blood alcohol test; that Officer Cantley requested that the Defendant submit to a blood alcohol test and advised the Defendant of the consequences of refusal; and that the Defendant refused to submit to a blood alcohol test. Therefore, the evidence sufficiently supports the jury's finding that the Defendant violated the implied consent law. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude: (1) that the use of an indictment to commence proceedings to determine if the Defendant violated the implied

---

[2]Although the jury was instructed to use a "reasonable doubt" standard, in our view, the proper standard in this case was a "preponderance of the evidence" standard. Any error here would benefit the Defendant.

6

consent law was proper; (2) that the trial court properly allowed a jury to try the Defendant for a violation of the implied consent law; and (3) that the evidence sufficiently supports the jury's finding that the Defendant violated the implied consent law. Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____

_____
ROBERT W. WEDEMEYER